HAROLD E. HUSTEAD, ADMINISTRATOR OF THE ESTATE OF PEGGY LEE HUSTEAD, DECEASED, APPELLANT, *v.* FARMERS INSURANCE GROUP, FARMERS INSURANCE EXCHANGE, FARMERS UNDERWRITERS ASSOCIATION, RESPONDENTS.

No. 7048

September 30, 1974                    526 P.2d 1116

*Thornton & Stephens,* of Reno, for Appellant.

*Goldwater, Hill, Mortimer & Sourwine,* of Reno, for Respondents.

## OPINION

By the Court, BATJER, J.:

On November 7, 1969, Peggy Lee Hustead was fatally injured in an automobile accident near Lovelock, Nevada. The accident was apparently caused by the negligence of Charles R. Palmer who was operating an uninsured motor vehicle owned by Karlyn Bell.

At the time of the fatal accident, Peggy was driving a 1967 Datsun automobile. It was one of three vehicles owned by her father, Harold E. Hustead, and insured by respondents under policy No. 87–57451295. The other two vehicles, a 1964 Chevrolet and a 1968 Ford Bronco were each insured under separate policies with the respondents. All of the policies were in good standing and contained uninsured motorist coverage. The Chevrolet was the described vehicle in policy No. 87–58208595, and the Ford Bronco was the described vehicle in policy No. 87–57781129.

Shortly after the accident, counsel for appellant made demand upon respondents for $45,000, the total maximum coverage under all three policies. Representatives of Farmers informed counsel that there was no coverage under the policies on the Chevrolet and Ford Bronco, but continued negotiations on the Datsun policy.

On June 2, 1970, Harold E. Hustead, as the administrator of the estate of Peggy Lee Hustead, deceased, petitioned the district court, pursuant to NRS 143.140, for an order authorizing settlement of a debt owed to the estate. In his petition he

alleged that he had filed a claim against Farmers Insurance Group "under the uninsured motorist coverage which covered the vehicle in which the deceased was killed," and that Farmers Insurance Group offered to settle *the claim* for $13,250. On June 15, 1970, the district court entered its order authorizing and approving the settlement of that claim.[1]

On June 29, 1970, the decedent's mother, Wilma Hustead, individually, and Harold E. Hustead, individually, and as administrator of the estate of Peggy Lee Hustead, deceased, executed a release of claim.[2] Farmers then paid appellant the sum of $13,250.[3]

On November 4, 1971, appellant filed this action seeking recovery for Peggy's injury and death, under policy

---

[1]The order of the district court reads as follows: "A verified petition for authorization to settle claim having been filed June 2, 1970, and it appearing from the file that notice has been given as required by law, and good cause appearing from said petition,

"IT IS HEREBY ORDERED that settlement of a claim against Farmers Insurance Group in the amount of $13,250.00 is hereby authorized and approved."

[2]The release executed by the Husteads reads in pertinent part:

"For and in consideration of the payment to the Estate of Peggy Lee Hustead the sum of Thirteen Thousand Two Hundred and Fifty Dollars ($13,250.00), the receipt of which is hereby acknowledged, we, being of lawful age, do hereby release, acquit, and forever discharge Farmers Insurance Group of and from any and all actions, causes of action, claims, demands, damage, costs, loss of services, expenses, and compensation, on account of, or in any way growing out of, any and all personal injuries including any cause of action which we may have for wrongful death of the deceased, Peggy Lee Hustead resulting from an accident that occurred on the seventh day of November, 1969, at or near Lovelock, Nevada.

"We have not been unduly influenced to any extent whatever in making this release by any representations or statements regarding said accident, made by the firm or corporation who is hereby released, or by any person or persons representing him or them.

"It is further understood and agreed that this settlement is the compromise of a disputed claim to damages arising out of an accident with an uninsured motorist, the claim being made and now released pursuant to a policy of uninsured motorist insurance. This release is in no way an admission of liability by the uninsured motorist but neither is it a denial of liability.

"This release contains the entire agreement between the parties hereto, and the terms of this release are contractual and not a mere recital. . . ."

[3]That same day, June 29, 1970, there being no claims filed by creditors, the estate of Peggy Lee Hustead, deceased, was distributed in equal shares to Harold E. Hustead and Wilma Hustead and Harold E. Hustead was discharged as administrator. On November 3, 1971, Harold E. Hustead was reissued Letters of Administration.

No. 87–58208595, covering the Chevrolet, and policy No. 87–57781129, covering the Ford Bronco.

Respondents thereafter moved the district court for summary judgment upon the ground that there was no genuine issue as to any material fact and that they were entitled to a judgment in their favor as a matter of law. Extensive briefs were filed by both parties. Respondents contended that appellant had (a) released all claims against respondents which may have existed by virtue of uninsured motorist coverage, (b) failed to bring suit within one year after the accident as required by the policy covering the Datsun and the policy covering the Ford Bronco, and (c) that "stacking" of insurance policies in this case was improper because Peggy was not an insured under the policies covering the Chevrolet or the Ford Bronco. Appellant countered with the arguments that (1) the release of claim covered only the Datsun policy, (2) that appellant was not required to bring suit against either respondents or the uninsured motorist within one year after the date of the accident, (3) that Peggy was an insured under all three policies and as an insured her estate could not be precluded from recovery by clauses inserted into the policies by respondents which are against public policy.

The district court granted respondents' motion for summary judgment on the ground that appellant had released all claims against respondents which may have existed by virtue of uninsured coverage, and that there was no genuine issue as to any material fact. This appeal is taken from the resulting judgment.

We agree with the district court.

The release was not only executed by the appellant in his capacity as administrator of the estate of Peggy Lee Hustead, deceased, but by him individually and by Wilma Hustead as the only heirs of Peggy Lee Hustead. Although the order of the district court entered on June 15, 1970, authorizing and approving appellant's settlement of a claim against respondents was limited to the "uninsured motorist coverage which covered the vehicle in which the deceased was killed," that order did not restrict the scope of the release given by Wilma Hustead and the appellant in his individual capacity. It fully and completely released all claims against respondents arising out of the November 7, 1969 accident which caused the death of Peggy Lee Hustead. It could hardly have been clearer or more specific and inclusive.

Appellant claims that the release is ambiguous because it refers to "the claim being made and now released pursuant to

a policy of uninsured motorist insurance." The district court did not find such ambiguity, nor do we. The release is not limited or diminished by the language of that clause, which is merely explanatory of where the claim was made and the reason for its being released.

If such a release can be circumvented or nullified, then every written release, no matter how clear, pertinent and all inclusive can be set aside whenever one of the parties has a change of mind, or there has been a subsequent change of circumstances which were unforeseen. See Emery v. Mackiewicz, 240 A.2d 68 (Pa. 1968); Schwieger v. Harry W. Robbins & Co., 290 P.2d 984 (Wash. 1955). Cf. Nogan v. Berry, 193 A.2d 79 (Del. 1963).

After the Husteads executed the release of claim, this court decided State Farm Mut. Ins. v. Hinkel, 87 Nev. 478, 488 P.2d 1151 (1971), and United Services Auto. Ass'n v. Dokter, 86 Nev. 917, 478 P.2d 583 (1970). Undoubtedly our opinion in those two cases prompted the appellant to file this action on November 4, 1971.[4] The principles of law announced in those

---

[4]In State Farm Mutual Automobile Ins. Co. v. Hinkel, we said: "NRS 693.115(1) becomes a part of every policy of insurance to which it is applicable to the same effect as if it were written out in full in the policy itself. (citations omitted) An insurance company may limit coverage only if the limitation does not contravene public policy. The expressed public policy of Nevada is that an insurance company may not issue an automobile or motor vehicle liability policy which does not protect the insured from owners or operators of uninsured motor vehicles, unless the named insured rejects such coverage. . . . The exclusionary provisions of the policy are void and unenforceable because they are repugnant to the intent of the statute and against public policy." 87 Nev. at 481, 488 P.2d at 1153.

In United Services Ass'n v. Dokter, a case where the insurance policies were written before the operative date of our statute (NRS 693.115(1)) requiring insurers to provide uninsured motorist coverage, we held that a pedestrian who was the named insured under two automobile insurance policies by the same insurance company and who was struck and injured by an uninsured motorist, could recover under the uninsured motorist provision of each policy even though each included an "other insurance" clause prorating the loss between available policies and deeming the loss not to be in excess of the higher of the applicable limits of the available policies. In that case we said: "Where the insurer issues two automobile policies containing uninsured motorist coverage, the extent of coverage is the combined total amount of such policies, and actual damages sustained by the insured are recoverable to the full extent of the combined limits of both policies." 86 Nev. at 920, 478 P.2d at 585.

cases will not be applied retroactively in this case to circumvent or render nugatory the written release.

The effectiveness of the release is dispositive of this case. We need not reach the other issues raised by appellant.

The judgment entered in this case is affirmed.

THOMPSON, C. J., and MOWBRAY, GUNDERSON, and ZENOFF, JJ., concur.