CLARK COUNTY EDUCATION ASSOCIATION AND ISABELL STUART, APPELLANTS, v. CLARK COUNTY SCHOOL DISTRICT, RESPONDENT.

No. 43306

March 30, 2006                                    131 P.3d 5

---

*Dyer, Lawrence, Penrose, Flaherty & Donaldson* and *Frank C. Flaherty* and *James W. Penrose*, Carson City, for Appellants.

*C. W. Hoffman Jr.*, General Counsel, and *Jon M. Okazaki*, Associate General Counsel, Las Vegas, for Respondent.

Before MAUPIN, GIBBONS and HARDESTY, JJ.

## OPINION

By the Court, HARDESTY, J.:

In this appeal, we clarify the common-law grounds available for a court to review a private arbitration award. We have previously recognized that a private arbitration award may be reviewed under two common-law grounds: (1) the award is arbitrary, capricious, or unsupported by the arbitration agreement; or (2) the arbitrator manifestly disregarded the law. Under the first ground, we clarify that the reviewing court may only concern itself with the arbitrator's findings and whether they are supported by substantial evidence or whether the subject matter of the arbitration is within the arbitration agreement. Under the second ground, we conclude that the reviewing court may only concern itself with whether the arbitrator knew of the law and, if so, consciously disregarded it, not whether the private arbitrator's interpretation of the law was correct.

In this case, the arbitrator's award was supported by substantial evidence and therefore not arbitrary, capricious, or unsupported by

the arbitration agreement. We further conclude that the arbitrator did not manifestly disregard the law, as she recognized NRS 391.313 and applied the statute in reaching her decision.

## FACTS

In 1990, Isabell Stuart was hired by the Clark County School District (the District) as an English Learning Language instructor at Sunrise Acres Elementary School in Las Vegas. As a teacher within the District, Stuart was a member of the bargaining unit for which the Clark County Education Association (CCEA) is the recognized bargaining agent.[1] By 1996, the District became concerned with Stuart's job performance, issuing her many notices of concern, written warnings, and admonitions.

In March 2001, Stuart received an admonition for failing to follow proper procedures and protocols when administering tests to the English Learning Language students. After this admonishment, Stuart received training and mentoring from an English Learning Language facilitator, who reviewed the testing manual and problematic testing areas with Stuart. In a further attempt to assist Stuart, the District reduced her caseload by as much as fifty percent.

In April 2001, Stuart received another admonition based on her failure to administer the English Learning Language tests in accordance with the proper protocols and procedures. However, this admonishment was coupled with a recommendation for a short-term suspension of ten days. In May 2001, the District provided Stuart with one-on-one training, which included discussions on testing procedures, test scoring, and completing reports on the testing. Likewise, in October 2001, Stuart received two days of one-on-one training and feedback on her testing procedures.

In April 2002, Stuart received another admonishment from the District for failure to administer the tests in a satisfactory manner. This admonition was coupled with a recommendation that Stuart be suspended for twenty days. Eight days later, Stuart received a letter stating that the superintendent was recommending that her employment contract with the District not be renewed.

When the District decided not to renew Stuart's contract, Stuart filed a claim with her bargaining agent, CCEA. The claim proceeded to private binding arbitration pursuant to the collective

---

[1]The collective bargaining agreement between CCEA and the District provides for grievance and arbitration procedures to be followed when an employee files a grievance. Specifically, the agreement states, "[a] grievance is defined as any dispute which arises regarding an interpretation, application or alleged violation of any of the provisions of [the agreement]." Additionally, the agreement specifies that the arbitrator's decisions "shall be final and binding on all parties."

bargaining agreement. During the arbitration proceedings, Stuart and CCEA claimed that the District had violated the requirements of NRS 391.313 by dismissing Stuart only eight days after her admonishment was issued, but the arbitrator upheld the District's decisions to suspend Stuart and not renew her employment contract.

Thereafter, Stuart and CCEA filed a petition to vacate the arbitrator's decision in district court, alleging, again, that the District had failed to comply with NRS 391.313 by dismissing Stuart only eight days after the April 2002 admonishment. The district court, after determining that the arbitrator's decision was not arbitrary and capricious and that the arbitrator did not disregard NRS 391.313, affirmed the arbitrator's award. This appeal followed.

## DISCUSSION

This court has previously recognized both statutory and common-law grounds to be applied by a court reviewing an award resulting from private binding arbitration.[2] The statutory grounds are contained in the Uniform Arbitration Act, specifically NRS 38.241(1), and are not implicated as a basis for relief in this appeal.[3] There are two common-law grounds recognized in Nevada under which a court may review private binding arbitration awards: (1) whether the award is arbitrary, capricious, or unsupported by the agreement; and (2) whether the arbitrator manifestly disregarded the law.[4] Initially, we take this opportunity to clarify that while the latter standard ensures that the arbitrator recognizes applicable law, the former standard ensures that the arbitrator does not disregard the facts or the terms of the arbitration agreement.

''In determining a question under an arbitration agreement, an arbitrator enjoys a broad discretion, but that discretion is not without limits.''[5] ''He is confined to interpreting and applying the

[2]*Graber v. Comstock Bank*, 111 Nev. 1421, 1426, 905 P.2d 1112, 1115 (1995); *Health Plan of Nevada v. Rainbow Med.*, 120 Nev. 689, 695, 100 P.3d 172, 176 (2004); *Wichinsky v. Mosa*, 109 Nev. 84, 89-90, 847 P.2d 727, 731 (1993); *Bohlmann v. Printz*, 120 Nev. 543, 546, 96 P.3d 1155, 1157 (2004).

[3]Stuart's and CCEA's argument that the arbitration award should be vacated on statutory grounds under NRS 38.241 or because the arbitrator exceeded her powers under the collective bargaining agreement is without merit. None of the grounds listed in NRS 38.241 is at issue in this case, and the contention that the arbitrator exceeded her powers under the agreement by failing to abide by the requirements of NRS 391.313 is better characterized as a manifest-disregard-of-the-law argument.

[4]*Wichinsky*, 109 Nev. at 89-90, 847 P.2d at 731.

[5]*Exber, Inc., v. Sletten Constr. Co.*, 92 Nev. 721, 731, 558 P.2d 517, 523 (1976).

agreement, and his award need not be enforced if it is arbitrary, capricious, or unsupported by the agreement."[6] But, "[j]udicial inquiry under the manifest-disregard-of-the-law standard is extremely limited."[7] "A party seeking to vacate an arbitration award based on manifest disregard of the law may not merely object to the results of the arbitration."[8] In such instance, "the issue is not whether the arbitrator correctly interpreted the law, but whether the arbitrator, knowing the law and recognizing that the law required a particular result, simply disregarded the law."[9]

In *Wichinsky v. Mosa*, we vacated an arbitrator's award of compensatory and punitive damages because of the "lack of evidence to support the arbitrator's *findings*" and because "the arbitrator demonstrated a manifest disregard of the law."[10] Thus, *Wichinsky* properly demonstrated that the arbitrary-and-capricious standard limits a reviewing court's consideration to whether the arbitrator's findings are supported by substantial evidence, while the manifest-disregard-of-the-law standard limits the reviewing court's concern to whether the arbitrator consciously ignored or missed the law. As a result, neither standard permits a reviewing court to consider the arbitrator's interpretation of the law.[11]

Stuart and CCEA argue that the District violated NRS 391.313 because it did not provide Stuart with the opportunity to improve her job performance after the April 2002 admonition. Implicit in this argument is the contention that the assistance provided to Stuart after her first and second admonitions cannot be used to support the District's decision to not reemploy Stuart under NRS 391.313. As a result, Stuart and CCEA claim that the arbitrator's award was arbitrary and capricious and/or the arbitrator manifestly disregarded the provisions of NRS 391.313. We disagree.

Before dismissing a certificated teacher for unprofessional conduct, an admonishment must be given to the teacher under NRS 391.313 to enable the teacher to remedy the cause for potential dismissal.[12]

---

[6]*Id.*

[7]*Bohlmann*, 120 Nev. at 547, 96 P.3d at 1158.

[8]*Id.*

[9]*Id.*

[10]109 Nev. at 90, 847 P.2d at 731 (emphasis added).

[11]*See Bohlmann*, 120 Nev. at 547, 96 P.3d at 1157-58.

[12]*Board of Sch. Trustees v. Rathbun*, 92 Nev. 651, 652, 556 P.2d 548, 548 (1976).

NRS 391.313 states in relevant part:

> 1. Whenever an administrator charged with supervision of a licensed employee believes it is necessary to admonish the employee for a reason that he believes may lead to demotion, dismissal or cause the employee not to be reemployed under the provisions of NRS 391.312, he shall:
>
> (a) . . . bring the matter to the attention of the employee involved, in writing, stating the reasons for the admonition and that it may lead to his demotion, dismissal or a refusal to reemploy him, and make a reasonable effort to assist the employee to correct whatever appears to be the cause for his potential demotion, dismissal or a potential recommendation not to reemploy him; and
>
> (b) . . . allow reasonable time for improvement, which must not exceed 3 months for the first admonition.
>
> An admonition issued to a licensed employee who, within the time granted for improvement, has met the standards set for him by the administrator who issued the admonition must be removed from the records of the employee together with all notations and indications of its having been issued. The admonition must be removed from the records of the employee not later than 3 years after it is issued.

In *Board of School Trustees v. Rathbun*, this court held that pursuant to NRS 391.313, a certified teacher must be admonished for each diverse and dissimilar type of conduct before being dismissed for unprofessional conduct.[13] *Rathbun* involved an admonishment for conduct that was both unrelated to the teacher's dismissal and his job performance.[14] Here, unlike the teacher in *Rathbun*,[15] Stuart was admonished numerous times for the same unprofessional conduct concerning proper administration of English Learning Language tests. Thus, there is no violation of NRS 391.313 since all of the admonishments were for the same type of conduct and the post March and April 2001 admonishment evidence was relevant to determine whether Stuart had cured her deficient performance.

*Arbitrary and capricious*

The arbitrary-and-capricious standard does not permit a reviewing court to vacate an arbitrator's award based on a misinterpreta-

---

[13]*Id.* at 652, 556 P.2d at 548-49.

[14]*Id.* at 652-53, 556 P.2d at 549.

[15]92 Nev. 651, 556 P.2d 548 (1976).

tion of the law. Rather, our review is limited to whether the arbitrator's findings are supported by substantial evidence in the record.[16] Here, after holding a hearing on the matter, the arbitrator found that the District's decision not to renew Stuart's employment contract was proper because Stuart was not able to administer tests in accordance with the protocols and procedures set forth by the District. The arbitrator made numerous findings of specific instances surrounding Stuart's continuous inability to properly administer the tests.

More importantly, the arbitrator was not persuaded by Stuart and CCEA's contention that Stuart was not provided sufficient time to improve her performance under NRS 391.313. The arbitrator noted that the District had provided her with assistance from March 2001 to April 2002 in order to correct her deficient performance, including one-on-one training, a fifty percent reduced workload, and other mentoring.

Finally, the arbitration award cited NRS 391.311 to NRS 391.314 and discussed the April 2002 admonition with respect to the provision in NRS 391.313 concerning time for improvement. Given the substantial evidence of the assistance provided to Stuart from March 2001 to April 2002, the arbitrator found Stuart was afforded reasonable time to improve her performance but was unable to do so.[17] Unlike our decision in *Wichinsky*, in which we noted that the appellate record was scant as to the arbitration proceedings,[18] here the arbitrator's seventeen-page opinion and award specifically recounts the factual underpinning of the award in favor of the District. Thus, we conclude that the arbitrator's decision is supported by substantial evidence and therefore is not arbitrary and capricious.

### Manifest disregard of the law

■■■■■■■

"[W]hen searching for a manifest disregard for the law, a court should attempt to locate arbitrators who appreciate the significance of clearly governing legal principles but decide to ignore or pay no attention to those principles."[19] Here, Stuart and CCEA do not contend that the arbitrator willfully ignored the requirements of NRS 391.313. Rather, they argue that the arbitrator's interpretation

---

[16]*Wichinsky*, 109 Nev. at 90, 847 P.2d at 731.

[17]Specifically, the arbitrator stated that "[i]t cannot be argued that [Stuart] had not been provided with ample time, warning, and assistance to improve," and that "[t]he evidence also suggests that it is highly unlikely that additional time or assistance will correct the problems."

[18]109 Nev. at 87, 847 P.2d at 729.

[19]*Graber*, 111 Nev. at 1428, 905 P.2d at 1116.

of NRS 391.313 constituted a manifest disregard of the law. But, we may not concern ourselves with the correctness of the arbitrator's interpretation of the statute.[20] Furthermore, as noted above, the arbitrator clearly appreciated the significance of NRS 391.313, as it was cited in her arbitration award. The arbitrator found that Stuart was provided the assistance required by NRS 391.313 and, therefore, the District's decision to not renew her contract was proper. Consequently, the arbitrator did not manifestly disregard the statute.

Nevertheless, we also independently agree with her interpretation of that statute. Unless a statute is ambiguous, we attribute the plain meaning to the statute's language.[21] "An ambiguity arises where the statutory language lends itself to two or more reasonable interpretations."[22] Where a statute is deemed ambiguous, the Legislature's intent controls.[23] "We look to reason and public policy to discern legislative intent."[24]

Here, NRS 391.313 is ambiguous because there is no explicit language as to whether a subsequent admonition erases a previous one with respect to the mandatory time for improvement provision. The language of NRS 391.313 lends itself to two or more interpretations: (1) that a previously written admonition must be removed from the employee's file after assistance to improve performance is provided; or (2) that the written admonition remains in the file and therefore a subsequent admonition does not erase a previous one, unless such admonition was issued over three years ago.

The legislative history of Assembly Bill 346, which was later codified at NRS 391.313, initially called for removal of admonishments from an employee's file after three months; however, it was amended to allow removal of admonishments after three years.[25] Moreover, the provisions of NRS 391.313 relating to the length of time an admonition is to be kept on file for an employee were thoroughly debated prior to its enactment. The Legislature decided that the three-year period struck the proper balance to allow the school districts sufficient time to evaluate its employees while eliminating unfavorable reports once the employee regained his or her professional competence.

[20]*Bohlmann*, 120 Nev. at 547, 96 P.3d at 1158.

[21]*Firestone v. State*, 120 Nev. 13, 16, 83 P.3d 279, 281 (2004).

[22]*State v. Catanio*, 120 Nev. 1030, 1033, 102 P.3d 588, 590 (2004).

[23]*Id.*

[24]*Id.*

[25]Hearing on A.B. 346 Before the Senate Comm. on Human Resources and Facilities, 59th Leg. (Nev., April 19, 1977).

Based on the above, we would conclude that a subsequent admonition does not erase a previous one so long as it is within the three-year time provision pursuant to NRS 391.313. Thus, if an admonition is issued and proper time for improvement and assistance is given, a second admonition for the same conduct would not require additional time and assistance.

Stuart was given an admonition in March 2001, another in April 2001, and the latter was coupled with a ten-day suspension. The final admonition, which was coupled with a twenty-day suspension, was given to Stuart in April 2002. All of these admonishments concerned Stuart's inability to properly administer the English Learning Language tests. After the 2001 admonishments, Stuart received substantial training and education regarding proper administration of the tests. NRS 391.313(1) states that admonishments are to be removed from the employee's file when he or she has met the required improvement. Here, despite the District's assistance to Stuart, no such improvement was made and therefore the District was entitled to demote, dismiss, or recommend that her contract not be renewed.

## CONCLUSION

The arbitrator's findings were not arbitrary, capricious, or unsupported by the arbitration agreement. Rather, the arbitrator's findings are supported by substantial evidence contained in the record. Similarly, the arbitrator did not manifestly disregard the law concerning NRS 391.313. Therefore, we affirm the district court's order confirming the arbitration award.

MAUPIN and GIBBONS, JJ., concur.